IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LOUIS ANGOTTI,
Plaintiff,

v.  Civil No. 3:23cv730 (DJN)

A. HARRIS, *et al.*,
Defendants.

**MEMORANDUM OPINION**

Louis Angotti, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Angotti contends that Defendants[2] denied him adequate care during his incarceration at the Deerfield Correctional Center for a hip and knee injury. This matter comes before the Court on the Amended Complaint filed by Angotti (ECF No. 14) and the Motion to Dismiss filed by Defendants Amonette and Dillman ("Defendants") (ECF No. 19). Defendants and the Court provided Angotti with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants are: A. Harris, a physician at the Deerfield Correctional Center ("DCC"); C. Sanderson, a nurse practitioner at the DCC; S. Wright, a nurse manager at the DCC; Mark Amonette, Chief Physician of the Virginia Department of Corrections ("VDOC"); Jeffrey Dillman, the Health Services Director of the VDOC; K. Silvas, a nurse practitioner at the DCC; A. Wilson, a physical therapist at the DCC; and K. Ketter, a nurse at the DCC.

Cir. 1975). (ECF Nos. 20, 23.) Angotti has filed a Response. (ECF No. 25.) For the reasons stated below, the Motion to Dismiss (ECF No. 19) will be GRANTED.

## I. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.   SUMMARY OF ALLEGATIONS

In his Amended Complaint, Angotti alleges as follows:[3]

> On or about September 18, 2022, [the] Orange County Sheriff ordered that I be transferred to the Virginia Department of Corrections, as the result, Plaintiff suffered a severe hip and knee injury. On this same day, September 18, 2022, Plaintiff was placed in the care of the Virginia Department of Corrections, particularly, Deerfield Correctional Center Medical Department. Upon arrival, there was medical staff with a wheelchair. I was transported to Housing Unit D, bed 34, and was left there in a wheelchair from September 18, 2022, until September 18, 2023, living in severe pain.
> While in Orange County Regional Jail, Plaintiff fell over a phone cord and sustained [a] serious hip and knee injury. . . .

(ECF No. 14, at 7–8.) Angotti alleges that despite being in pain, he did not receive surgery until September 18, 2023. (*Id.* at 17.) With respect to Defendants Amonette and Dillman, Angotti alleges as follows:

---

[3]   The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation and spelling in the quotations from the parties' submissions.

3

> Defendant Mark Amonette, Chief Physician for the Virginia Dept. of Corrections and Defendant Jeffrey Dillman, who is the Health Services Director for the Virginia Dept. of Corrections. Both Defendants [were] deliberately indiffere[nt] . . . to my serious medical needs. Both of these Defendants are responsible for VDOC entire medical system. Both implement medical policies and procedures, both Defendants are responsible for approving and disapproving medical procedures. Both Defendants [were] aware of the fact that I was being transferred into the Virginia Dept. of Correction[s] from Orange County Regional Jail for a serious medical condition. They knew that I needed surgery because they both received the jail records justifying the reason for a special transfer in the prison system.
> Defendant Amonette and Dillman [were] deliberately indiffere[nt] to [my] serious medical need[s] when they delayed surgery for 1 year subjecting the Plaintiff to cruel and unusual punishment. Sitting in or confined to a wheelchair for 11 months prior to surgery and thereafter surgery 6 months. I was made to endure unnecessary pain and suffering day and night. Hip, leg, and foot burning, swelling, blood clots, and pain. I could not sleep in the wheelchair because of the pain and burning. My leg and foot swell[ed] so big it fe[lt] like they [were] going to burst. Both Defendants [were] deliberately indifferent.

(*Id.* at 19–21.) Angotti contends that Defendants denied him adequate medical care during his imprisonment and delayed surgery for his hip and knee injury in violation of the Eighth Amendment.[4] Angotti identifies no relief sought in his Amended Complaint. However, in his original Complaint, Angotti indicated that he sought monetary damages and unspecified injunctive relief. (ECF No. 1, at 3.)

### III.  ANALYSIS

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of

---

[4]  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Angotti indicates that Defendants' liability stems from their supervisory roles as the Chief Physician and Health Services Director of the VDOC. Thus, Angotti attempts to impose liability on Defendants solely because they are heads of the medical and health services departments. To the extent that Angotti believes that Defendants should be held liable under a theory of *respondeat superior* simply based on their positions, he fails to state a claim for relief.[5] *Iqbal*, 556 U.S. at 676. Accordingly, any claim based on supervisory liability will be DISMISSED.[6]

---

[5]   To the extent that Angotti contends that Defendants are somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted) (citations omitted). Angotti fails to allege facts that support any one of these three factors.

[6]   Angotti vaguely contends that Defendants are liable for "implement[ing] medical policies and procedures" and "are responsible for approving and disapproving medical procedures." (ECF No. 14, at 20.) To state such a claim, Angotti must plead facts indicating that:
(1) Defendants had an official policy or custom of providing unconstitutional medical care;
(2) this official policy or custom reflected deliberate indifference to Angotti's Eighth

5

Angotti also indicates that Defendants were personally involved because they "knew that [he] needed surgery because they both received the jail records justifying the reason for a special transfer in the prison system," and that they delayed his surgery. (ECF No. 14, at 20.) Angotti's statement that Defendants personally received and reviewed his jail records and then drew the conclusion that he needed surgery qualifies as entirely speculative. *See Iqbal*, 556 U.S. at 679 (explaining that "where the well-pleaded facts do permit the court to infer more than the mere possibility of misconduct . . . [the complaint] has not 'shown'—'that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2)); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (explaining that "[s]pecificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations").

Angotti fails to allege facts that plausibly suggest "that the communication, in its content and manner of transmission, gave the prison official[s] sufficient notice to alert [them] to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Angotti must allege that Defendants "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Angotti's Amended Complaint lacks any detail about Defendants' alleged receipt of his jail records, what information the records included, and how Defendants would know from these records that Angotti needed immediate surgery. Angotti also fails to allege facts that would indicate that Defendants were personally involved in the delay of his receipt of surgery. Thus, Angotti's vague allegations fall short of permitting the conclusion that their

---

Amendment rights; and (3) this policy or custom caused or contributed to the cause of Angotti's allegedly inadequate medical care. *Spell v. McDaniel*, 824 F.2d 1380, 1385–88 (4th Cir. 1987). Angotti again fails to allege any one of these three factors.

6

alleged receipt of his records upon his transfer placed Defendants on sufficient notice of an excessive risk of harm to Angotti's health or safety by not providing him with surgery promptly. *See id.* As such, Angotti's limited factual allegations against Defendants fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). Accordingly, Angotti's claims against Defendants will be DISMISSED.

## IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 19) will be GRANTED. Any claim against Defendants will be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Plaintiff.

/s/
David J. Novak
United States District Judge

Alexandria, Virginia
Date: December 3, 2024